FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 10, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TASHIA G.,[1] | No. 1:20-cv-03207-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 16, 24 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1   Before the Court are the parties' cross-motions for summary judgment.  ECF

2   Nos. 16, 24.  The Court, having reviewed the administrative record and the parties'

3   briefing, is fully informed.  For the reasons discussed below, the Court grants

4   Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 24.

**JURISDICTION**

6   The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

8   A district court's review of a final decision of the Commissioner of Social

9   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

10  limited; the Commissioner's decision will be disturbed "only if it is not supported

11  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

12  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

13  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

14  (quotation and citation omitted).  Stated differently, substantial evidence equates to

15  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

16  citation omitted).  In determining whether the standard has been satisfied, a

17  reviewing court must consider the entire record as a whole rather than searching

18  for supporting evidence in isolation. *Id.*

19  In reviewing a denial of benefits, a district court may not substitute its

20  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

1    enumerated impairments, the Commissioner must find the claimant disabled and

2    award benefits.  20 C.F.R. § 416.920(d).

3         If the severity of the claimant's impairment does not meet or exceed the

4    severity of the enumerated impairments, the Commissioner must pause to assess

5    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6    defined generally as the claimant's ability to perform physical and mental work

7    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9         At step four, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing work that he or she has performed in

11   the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12   capable of performing past relevant work, the Commissioner must find that the

13   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14   performing such work, the analysis proceeds to step five.

15        At step five, the Commissioner considers whether, in view of the claimant's

16   RFC, the claimant is capable of performing other work in the national economy.

17   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18   must also consider vocational factors such as the claimant's age, education and

19   past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 18, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of October 1, 2017.[3]  Tr. 15, 114,

---

[3] Plaintiff previously applied for Title XVI benefits on February 3, 2014; the application was denied and resulted in a September 15, 2016 unfavorable decision. Tr. 92-113.  At the 2020 hearing the ALJ found that although the prior unfavorable ALJ decision created a presumption of continuing non-disability under *Chavez*, the presumption had been rebutted because of a change in Plaintiff's medical or vocational status since the prior decision.  Tr. 15; *see Chavez v. Bowen*, 844 F.2d

ORDER - 6

226-31.  The application was denied initially, and on reconsideration.  Tr. 146-61.

Plaintiff appeared before an administrative law judge (ALJ) on January 16, 2020.

Tr. 73-91.  On March 11, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since October 18, 2017.  Tr. 17.  At step

two, the ALJ found that Plaintiff has the following severe impairments: obesity,

anemia, hypertension, status-post iliac stent and anterior and posterior tibial artery

angioplasty, depression, anxiety, personality disorder, and methamphetamine

addiction.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 19-21.  The ALJ then concluded that Plaintiff has the RFC to

perform sedentary work with the following limitations:

> Her ability to stand and walk is limited to two hours in an eight-hour
> workday with normal breaks.  She can occasionally climb ladders,
> ropes, and scaffolds.  She must avoid concentrated exposure to
> extreme heat, humidity, or hazards.  She can engage in simple, routine
> 3-step tasks with no public contact but she would be able to briefly
> interact with others in a work setting.

---

691, 693 (9th Cir. 1998); *see also* Acquiescence Ruling (AR) 97-4(9), available at

1997 WL 742758 at *3.

ORDER - 7

Tr. 21.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 33.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, assembler (button and notion); touch-up screener (printed circuit board assembly); and toy stuffer.  Tr. 34.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On September 21, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

ORDER - 8

1.  Whether the ALJ conducted a proper step-three analysis[4];

2.  Whether the ALJ properly developed the record;

3.  Whether the ALJ conducted a proper step-two analysis;

4.  Whether the ALJ properly evaluated the medical opinion evidence; and

5.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 16 at 2.

## DISCUSSION

### A. Step Three

Plaintiff contends the ALJ erred at step three by failing to properly consider Plaintiff's heart disorder.  ECF No. 16 at 12-15.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work

_____

[4] Plaintiff makes arguments the ALJ erred at step two and three under the heading "The ALJ erred by not properly assessing the heart disorder."  ECF No. 16 at 12-15.  The Court acknowledges the arguments for both steps, noting the issues are somewhat intertwined, but separates them here for ease of discussion.

ORDER - 9

experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment …."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.126(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id*.  However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of

ORDER - 10

1  functional problems is not enough to establish disability at step three."  *Id*. at 1100

2  (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

3       The claimant bears the burden of establishing her impairment (or

4  combination of impairments) meets or equals the criteria of a listed impairment.

5  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

6  articulation of the reason(s) why the individual is or is not disabled at a later step in

7  the sequential evaluation process will provide rationale that is sufficient for a

8  subsequent reviewer or court to determine the basis for the finding about medical

9  equivalence at step 3."  SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27,

10  2017).

11       The ALJ found that Plaintiff's impairments and combinations of

12  impairments did not meet or equal any listings.  Tr. 19.  In terms of Plaintiff's

13  cardiovascular impairment(s), the ALJ found "[Plaintiff's] cardiovascular

14  condition fails to meet or medically equal listing 4.00 … [t]he medical record fails

15  to establish evidence of any cardiovascular system deficits that rise to listing

16  level."  *Id*.  The ALJ lists a number of the cardiovascular listings, noting

17  "[s]pecifically, the record fails to demonstrate evidence of listing level chronic

18  heart failure (4.02) … [through] peripheral arterial disease (4.12).  Therefore, I find

19  that the [Plaintiff's] cardiovascular condition fail[s] to meet or medically equal

20  listing level severity."  *Id*.  The ALJ also briefly discusses the requirements for

listing 4.02A and B (chronic heart failure) in regard to hypertension, finding

"[Plaintiff's] hypertension does not meet or medically equal section 4.02 or 4.04"

because the record "does not demonstrate evidence of systolic or diastolic failure

4.02(A); along with persistent symptoms of heart failure limiting the ability to

independently initiate, sustain, or complete activities or daily living …."  Tr. 20.

The ALJ also lists some of the B and C requirements of listings 4.02 and 4.04,

concluding "therefore I find that the [Plaintiff's] hypertension fails to meet or

medically equal listing level severity."  *Id.*

Plaintiff contends the ALJ failed to appropriately consider the complete

evidence concerning Plaintiff's heart impairment(s), including evidence of listing

level chronic heart failure under listing 4.02.  ECF No. 16 at 13-15.  Plaintiff also

argues that the ALJ failed to appropriately assess the extent of her cardiovascular

disorder, as revealed during hospitalization for a 2019 ischemic event.  *Id.*

While the ALJ was correct to discuss hypertension, as under the

cardiovascular listings it must be discussed in relation to the body system it affects,

*See* 20 C.F.R. § 404, Subpt. P, App. 1, § 4.00H1, this is the only discussion the

ALJ provides of listing 4.02 for chronic heart failure; Plaintiff points out, however,

that an echocardiogram during her August 2019 hospitalization showed cardiac

findings including moderately to severely dilated left ventricle, with left ventricular

end diastolic diameter (LVEDD) of 6.5 cm, which appears, in part, to meet the

ORDER - 12

requirements of listing 4.02A,[5] for systolic failure, along with findings of grade II diastolic dysfunction.  ECF No. 16 at 13; Tr. 647.  Plaintiff contends that Listing 4.02B1 is met due to limitations in the ability to independently initiate, sustain, or complete activities of daily living, pointing out that Plaintiff alleged her known heart condition left her physically and mentally exhausted to the point of being bedridden and that she often slept too much.  ECF No. 16 at 14.  Defendant acknowledges Plaintiff's contention that recent exams satisfy listing 4.02B1 but argues Plaintiff cannot meet her burden of showing prejudicial error at step three because Plaintiff "has made no effort to show that she met any of the other parts of listing 4.02, including listing 4.02(A)."  ECF No. 24 at 4-5.  However, as discussed *supra*, Plaintiff points out a 2019 echocardiogram showed LVEDD findings at the level required by 4.02A.  This imaging also shows the "symptoms and signs described in 4.00D2," as required by listing 4.02, with "cardiomegaly or

_____

[5] Listing 4.02A requires chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2 … with medically documented presence of the following: 1. systolic failure … with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent of less during a period of stability (not during an episode of acute heart failure) …."  *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 4.02A1.

ORDER - 13

1  ventricular dysfunction … present and demonstrated on appropriate medically

2  acceptable imaging" (echocardiogram) showing "[a]n LVEDD greater than 6.0

3  cm … measured during a period of stability (that is, not during an episode of acute

4  heart failure) [which] may be associated with systolic failure." *See* 20 C.F.R. §

5  404, Subpt. P, App. 1, § 4.02D2.  While Plaintiff has not shown that she was on a

6  regimen of prescribed treatment as required by listing 4.02, it appears to the Court

7  that more than one cardiovascular listing may be involved in her case, as indicated

8  by her hospitalization and treatment for arterial embolism in her leg/threatened

9  limb ischemia due to occlusive peripheral arterial disease. *See, e.g.*, Tr. 452, 518.

10  As Plaintiff contends the ALJ failed to appropriately assess the extent of her

11  cardiovascular disorder as revealed during hospitalization for a 2019 ischemic

12  event, including imaging showing listing level findings, the Court finds Plaintiff

13  has met her burden by showing there is evidence she may meet or equal a

14  cardiovascular listing, including listing 4.02.

15        Based on the August 2019 echocardiogram, which the ALJ did not discuss at

16  step three or elsewhere in the decision, the ALJ erred in finding "the record does

17  not demonstrate evidence of systolic or diastolic failure (4.02(A))." *See* Tr. 20.

18  Further, as Plaintiff points out, there has been no medical assessment of the

19  medical evidence relating to Plaintiff's cardiovascular impairments after her

20  August 2019 ischemic event, nor any medical opinion regarding Plaintiff's

ORDER - 14

physical functioning in light of new and/or worsened cardiovascular impairments. *See* ECF No. 16 at 5-6.

While Defendant argues that the ALJ adequately and reasonably assessed and interpreted the medical evidence, ECF No. 24 at 17-18, there is minimal discussion of her cardiovascular impairment(s) at step three or elsewhere in the decision, including findings relevant to the cardiovascular listings during and post Plaintiff's August 2019 ischemic event. *See generally* Tr. 15-34.  Plaintiff has reported an enlarged heart, history of mild strokes/transient ischemic attacks (TIA), and history of heart failure.  *See* Tr. 116, 445.  While the ALJ found her "enlarged heart" nonsevere, and adopted the prior ALJ's findings regarding her history of TIA, there is no evidence the ALJ (or Plaintiff's representative) inquired whether she was followed by cardiology, despite records from her August 2019 ischemic event, where she reported she did not have clotting disorder that she knew of, but "she [has] been followed by the cardiologist for some type of CHF or cardiac issue which she cannot clarify very well," *see* Tr. 454, and other medical records show diagnosis/active problems including CHF, along with a history of methamphetamine abuse including "meth induced cardiomyopathy," which the ALJ did not discuss in the decision, all of which require further analysis under 4.02 and the cardiovascular listings.  *See, e.g.*, Tr. 328, 505, 609, 649.

ORDER - 15

The ALJ limits his discussion of cardiovascular imaging to an August 6, 2019 x-ray of her heart, explaining at step two in the decision that a chest x-ray at that time showed her "heart remains mildly enlarged" but was "negative for acute disease"; the ALJ found her enlarged heart was therefore nonsevere.  Tr. 18-19; *see* Tr. 448-49.  This is the only cardiovascular imaging the ALJ discusses in the decision, despite the fact this imaging occurred when she was hospitalized for the ischemic event in her leg, and she also underwent CT angiogram and additional 2D and 3D imaging August 5, 2019, which showed presumed embolus in the proximal aspect of the right external iliac artery and possible nonocclusive small embolism versus heterogeneous plaque in the distal aspect of the left common iliac artery; occlusion of large portions of the anterior tibialis and posterior tibialis arteries; high grade stenosis at the proximal aspect of the right external iliac artery; diffused diseased anterior and posterior tibialis arteries and mildly diffusely diseased peroneal artery; and left leg diffusely diseased posterior tibialis artery.  Tr. 449-450.  An ultrasound of her right lower leg arteries on August 5, 2019 also suggested aortic iliac inflow disease, along with potentially significant stenosis between the superficial femoral artery and popliteal artery.  Tr. 450.  She was transferred to Seattle with diagnoses of "embolism, arterial, leg (obstruction of artery) and threatened limb ischemia due to occlusive [peripheral arterial disease]."

ORDER - 16

Tr. 452.  Additional abnormal findings were noted on EKG, along with the new findings on echocardiogram, discussed *supra*.  Tr. 442, 452; *see* ECF No 16 at 14.

Despite an ischemic event and treatment, there is no discussion by the ALJ as to whether Plaintiff has ongoing arterial or vascular disease, even though at the 2020 hearing she testified she has continued pain, difficulty walking and standing, and that she was told by her doctors that she still has blood clots in her legs; ER records also show she continued experiencing foot pain due to ongoing emboli or residuals from her 2019 procedures.  Tr. 77, 84-86, 394, 419.  While the ALJ found later exams were unremarkable, records from an ER visit in late August 2019, for example, show persistent foot pain due to "continue arterial occlusion from embolus, postprocedural pain," along with blistering on her toe and a healing laceration, and she was instructed to follow up with a vascular surgeon within 1-2 days; there is no record of follow up and she was not asked about this at the hearing although she reported everything was worse and that she continued experiencing foot pain due to continued issues with clots.  Tr. 84.  At a follow up with her PCP after her August 2019 surgery, her provider noted she had not received hospital records yet, but she also indicated Plaintiff would need to follow up with a vascular specialist.  Tr. 516.

The Court finds that the ALJ did not properly evaluate Plaintiff's cardiovascular impairment(s) under the listings.  The cardiovascular listings

ORDER - 17

explain not only what constitutes a cardiovascular impairment, and how to evaluate

issues such as her preexisting cardiomegaly, but also how these must be

documented and how the Agency will proceed if a person has not received ongoing

medical treatment or does not have sufficient longitudinal evidence, noting that "in

rare instances where there is no or insufficient longitudinal evidence, we may

purchase a consultative examination(s) to help us establish the severity and

duration of your impairment." *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 4.00B3.

The ALJ failed to provide sufficient rationale for the Court to determine the basis

for step three findings, and to adequately evaluate the relevant evidence of

cardiovascular impairments at step three or elsewhere in the decision.  As

discussed *supra*, the ALJ did not adequately discuss evidence of Plaintiff's

cardiovascular impairments, including multiple abnormal cardiovascular findings

and abnormal imaging which could support Plaintiff's argument of listing level

impairment; her cardiovascular impairments must be evaluated under the

cardiovascular listings.  *See* 20 C.F.R. § 404, Subpt. P, App. 1, §§ 4.00A-D;

4.00G-H3; 4.00I.

On remand, the ALJ is instructed to reconsider whether Plaintiff's

impairment(s) meets or equals Listing 4.02, or any of the cardiovascular listings,

evaluating the relevant medical evidence with the assistance of medical expert

ORDER - 18

testimony and further developing the record, if needed, with a consultative examination.

**B. Develop the record**

Plaintiff contends the ALJ failed to fully and fairly develop the record with a new physical consultative examination.  ECF No. 16 at 3-8.  The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel.  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1995).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (citing *Tonapetyan*, 242 F.3d at 1150).

Plaintiff points out that under the Regulations an ALJ may order a consultative exam either to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to make a determination or decision on a claim,

such as when "[t]here is an indication of a change in your condition that is likely to affect your ability to work … but the current severity of your impairment is not established." 20 C.F.R. § 416.919a(b)(4).  Here, there are no medical opinions after her ischemic event and additional/worsened cardiovascular impairment(s) were discovered in 2019; and the ALJ failed to consider all of Plaintiff's cardiovascular impairments and to properly evaluate her impairments under the cardiovascular listing(s), as explained in the discussion of step three, *supra*.  The ALJ also finds that the medical record "does not support that her physical impairments significantly deteriorated since the prior administrative judge's decision," without discussion of relevant new evidence, including objective evidence of worsening cardiovascular impairments and/or new cardiovascular impairments, and despite Plaintiff's allegations that "everything is worse," including leg pain.  *See* Tr. 22, 23, 26, 79-80, 83-86.  Plaintiff argues, and the Court agrees, that Plaintiff's ischemic event with treatment for new cardiovascular diagnoses in 2019 constituted a sudden and significant change in her physical functioning that created ambiguity over her functional capacity that should have prompted the ALJ to seek further information in the form of medical expert testimony or a consultative examination.  *Id.* at 6.

Defendant argues Plaintiff did not make a request for a consultative exam at the hearing or once the record was updated, and "this is not a case in which a

medical expert described the record as 'confusing' or testified that the record may

not be complete enough for the ALJ to reach a conclusion."  ECF No. 24 at 15

(citing *Tonapetyan*, 242 F.3d at 1150).  This case is different, however, as the ALJ

did not have all the evidence until after the hearing and also did not have the

benefit of any medical opinion evidence or testimony to support his conclusions.

Further, the ALJ did not discuss relevant evidence, which requires analysis under

the listings, as discussed *supra*.

The Court finds the medical evidence in this case is ambiguous as to the

severity of her condition after her hospitalization and treatment for new/worsened

cardiovascular impairments in 2019, and the ALJ failed to considerer relevant

evidence as to her cardiovascular impairments.  Accordingly, the record was

inadequate as to the extent of Plaintiff's cardiovascular problems.  The ALJ

therefore had a duty to develop the record to determine the severity of her

condition(s) and functional capacity.

Upon remand the ALJ is instructed to reevaluate the medical evidence of

record with the assistance of medical expert testimony, and to further develop the

record with a consultative examination, if necessary.

**C. Step Two**

Plaintiff contends the ALJ erred by failing to identify Plaintiff's other

cardiac impairments as severe.  ECF No. 19 at 16-17.  At step two of the sequential

ORDER - 21

process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id*.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work …."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing

ORDER - 22

with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[6]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

As the case is being remanded for the ALJ to reconsider the medical evidence at step three and to develop the record, the ALJ is also instructed to reconsider the step-two analysis with the assistance of medical expert testimony.

**D. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of Troy Bruner, Ed.D.  ECF No. 16 at 8-12.  As this case is being remanded for the ALJ to

---

[6] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 23

1    reconsider the medical evidence, the ALJ is also instructed to reconsider the

2    medical opinion evidence during the period at issue.

3    **E. Plaintiff's Symptom Claims**

4        Plaintiff contends the ALJ failed to give specific, clear, and convincing

5    reasons to not fully credit Plaintiff's testimony.  ECF No. 16 at 15-21.  An ALJ

6    engages in a two-step analysis to determine whether to discount a claimant's

7    testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

8    "First, the ALJ must determine whether there is objective medical evidence of an

9    underlying impairment which could reasonably be expected to produce the pain or

10   other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

11   "The claimant is not required to show that [the claimant's] impairment could

12   reasonably be expected to cause the severity of the symptom [the claimant] has

13   alleged; [the claimant] need only show that it could reasonably have caused some

14   degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15       Second, "[i]f the claimant meets the first test and there is no evidence of

16   malingering, the ALJ can only reject the claimant's testimony about the severity

17   of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19   omitted).  General findings are insufficient; rather, the ALJ must identify what

20   symptom claims are being discounted and what evidence undermines these claims.

1   *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

2   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

3   explain why it discounted claimant's symptom claims)). "The clear and

4   convincing [evidence] standard is the most demanding required in Social Security

5   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

6   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

7        Factors to be considered in evaluating the intensity, persistence, and limiting

8   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

9   duration, frequency, and intensity of pain or other symptoms; 3) factors that

10  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

11  side effects of any medication an individual takes or has taken to alleviate pain or

12  other symptoms; 5) treatment, other than medication, an individual receives or has

13  received for relief of pain or other symptoms; 6) any measures other than treatment

14  an individual uses or has used to relieve pain or other symptoms; and 7) any other

15  factors concerning an individual's functional limitations and restrictions due to

16  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

17  416.929(3).  The ALJ is instructed to "consider all of the evidence in an

18  individual's record," "to determine how symptoms limit ability to perform work-

19  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

20

ORDER - 25

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 22-23.

Having determined a remand is necessary to readdress the medical evidence at step three, the ALJ is also instructed to carefully reevaluate Plaintiff's symptom claims in the context of the entire record.

**F. Remedy**

The Court finds further proceedings are necessary to resolve conflicts in the record, as well as to further develop the record.  On remand, the ALJ is to fully develop the record with the assistance of medical expert testimony, including ordering a consultative examination if necessary.  As such, the case is remanded for further proceedings consistent with this Order.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

ORDER - 26

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 10, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 27